1
2
3
4
5
6
7               IN THE UNITED STATES DISTRICT COURT
8             FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

MARK MORGAN,                                Case No.: 13-cv-1041 JSC

                    Plaintiff,              **ORDER RE: THE CITY'S MOTION
                                            FOR SUMMARY JUDGMENT (Dkt.**
        v.                                  **No. 19)**

PENINSULA CORRIDOR JOINT
POWERS BOARD, et al.,

                    Defendants.

        Plaintiff Mark Morgan alleges that Defendant City and County of San Francisco ("the

City") is liable for injuries he sustained from an October 10, 2010 bicycle accident.  Now

pending before the Court is the City's Motion for Summary Judgment.  (Dkt. No. 19.)

Among other issues, the City contends it is entitled to judgment on its design immunity

affirmative defense. After carefully considering the pleadings and evidence submitted by the

parties, including their post-hearing supplemental filings, and having had the benefit of oral

argument on December 12, 2013, the Court grants in part and denies in part Defendant's

motion for summary judgment.[1]

---

[1] All parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to
28 U.S.C. § 636(c).

United States District Court
Northern District of California

# BACKGROUND

On October 10, 2010, Plaintiff was riding his bicycle in the eastbound bicycle lane on Townsend Street between Seventh and Eighth Streets in San Francisco.  This was the first time he had ridden his bicycle on Townsend Street.  Plaintiff attempted to make a right turn onto Seventh Street.  To do so, he crossed a set of railroad tracks that run parallel to the Townsend Street bicycle lane.  He successfully crossed the first track, but then his wheel became stuck in or near the second track and he fell off the bicycle onto the pavement sustaining injuries.

The City had installed the Townsend Street bicycle lane in which Plaintiff was riding approximately two months before the accident.  The bicycle lane was implemented pursuant to the 2009 San Francisco Bicycle Plan ("the Plan") which called for the addition of bicycle lanes in both directions on Townsend Street between Fourth and Eighth Streets.  (Dkt. No. 27 ¶¶ 5-6.)  The San Francisco Municipal Transportation Agency ("SFMTA") Board of Directors and the San Francisco Board of Supervisors approved the plan to place bicycle lanes on Townsend Street in June 2009.  The specific bicycle plan pavement markings and roadway features were subsequently approved by Mike Sallaberry, a licensed traffic engineer and the then-senior engineer in charge of project development and implementation in the Livable Streets Subdivision of the Sustainable Streets Division of the SFMTA.  (*Id*. ¶ 5.)

Plaintiff subsequently sued the City, among other defendants, in state court.  Once Plaintiff added the National Railroad Passenger Corporation ("Amtrak") as a defendant, the lawsuit was removed to this Court on the basis of federal question jurisdiction.  Plaintiff alleges that the City is liable for having created and maintained a dangerous condition that led to his injuries; in particular, he alleges that the design of the bicycle lane, as well as the deteriorated condition of the pavement adjacent to the train tracks next to the lane, caused his accident. The City now moves for summary judgment on the ground that it is entitled to design immunity as a matter of law and that the evidence is insufficient to support a finding that the accident was caused by the City's negligent maintenance of the roadway.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a).  The Court must draw "all reasonable inferences [and] resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).  A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To the extent the City is moving for judgment on Plaintiff's claims, the City, as the moving party, bears the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing that Plaintiff cannot produce evidence sufficient to satisfy his burden of proof at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the City meets that burden, Plaintiff, as the non-moving party, must show that a material factual dispute exists. *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

The City is also moving for judgment on its design immunity affirmative defense on which its bears the ultimate burden of persuasion. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006).  For this claim, as "the party moving for summary judgment that would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks and citation omitted). "In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

If the City "carries its burden of production, the nonmoving party [here, Plaintiff] must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  If the nonmoving party fails to do so, "the moving party wins the motion for summary judgment." *Id.*  "But if the nonmoving party

United States District Court
Northern District of California

United States District Court
Northern District of California

1  produces enough evidence to create a genuine issue of material fact, the nonmoving party

2  defeats the motion." *Id*. Allegations alone are not sufficient to meet Plaintiff's burden;

3  instead, Plaintiff must submit admissible evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1076

4  (9th Cir. 2001). Plaintiff's evidence must be such that a reasonable trier of fact could return a

5  verdict in Plaintiff's favor, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.

6  1995), and the Court "is not required to comb the record to find some reason to deny a motion

7  for summary judgment," *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir.

8  1988).

9                                    **DISCUSSION**

10      Plaintiff's Complaint appears to plead two causes of action against the City: (1)

11 general negligence, and (2) premises liability based on a dangerous condition on public

12 property. (Dkt. No. 24-1.) The City moves for summary judgment on both causes of action;

13 however, Plaintiff's opposition addresses only his premises liability claim. Accordingly, to

14 the extent Plaintiff pled a general negligence claim against the City, Defendant's unopposed

15 motion for summary judgment on this claim is granted.

16      Municipal premises liability is a creature of statute. California law, Government Code

17 section 835, makes a public entity, such as the City,

18      liable for injury caused by a dangerous condition of its property if the plaintiff
19      establishes that the property was in a dangerous condition at the time of the
20      injury, that the injury was proximately caused by the dangerous condition, that
21      the dangerous condition created a reasonably foreseeable risk of the kind of
        injury which was incurred, and that either:

22      (a) a negligent or wrongful act or omission of an employee of the public
23      entity within the scope of his employment created the dangerous condition; or

24      (b) The public entity had actual or constructive notice of the dangerous
25      condition under Section 835.2 a sufficient time prior to the injury to have taken
        measures to protect against the dangerous condition.
26

27 Cal. Gov't Code § 835. A "dangerous condition" is defined as "a condition of property that

28 creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury

                                           4

1   when such property . . . is used with due care in a manner in which it is reasonably

2   foreseeable that it will be used." *Id.* at § 830(a). "[A] claim alleging a dangerous condition

3   may not rely on generalized allegations but must specify in what manner the condition

4   constituted a dangerous condition." *Cerna v. City of Oakland*, 161 Cal.App.4th 1340, 1346-

5   47 (2008) (internal citation omitted).  A dangerous condition exists when public property "is

6   physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those

7   using the property itself," or "because of the design or location of the improvement, the

8   interrelationship of its structural or natural features, or the presence of latent hazards

9   associated with its normal use." *Bonanno v. Cent. Contra Costa Transit Auth.*, 30 Cal. 4th

10  139, 148-49 (2003).

11      The City contends that summary judgment is proper for three reasons: (1) it is entitled

12  to design immunity pursuant to California Government Code Section 830.6 for the design of

13  the bicycle path, (2) Plaintiff cannot establish that the City is liable for any dangerous

14  condition created by the deterioration of the pavement abutting the railroad tracks, and (3) the

15  lack of a warning sign is not a dangerous condition as a matter of law.

16      **A.    Design Immunity**

17      The City first contends that it is entitled to design immunity for Plaintiff's claims

18  arising from the bicycle path design.  California Government Code Section 830.6 provides a

19  public entity with immunity

20          for an injury caused by the plan or design of a construction of, or an
            improvement to, public property where such plan or design has been approved
21          in advance of the construction or improvement by the legislative body of the
            public entity or some other body or employee exercising discretionary authority
22          to give such approval . . . , if the trial or appellate court determines that there is
            any substantial evidence upon the basis of which (a) a reasonable public
23          employee could have adopted the plan or design . . . or (b) a reasonable
            legislative body or other body or employee could have approved the plan or
24          design.
25

26  *Id.*  "The rationale behind design immunity is to prevent a jury from simply reweighing the

27  same factors considered by the governmental entity which approved the design." *Cameron v.*

28  *State of California*, 7 Cal. 3d 318, 326 (1972) (internal citation and quotation marks omitted).

5

To establish the affirmative defense of design immunity, a public entity must establish three elements:

> first, the *approval* of design *in advance* of construction by a legislative body officer exercising discretionary authority; second, a court finding of substantial evidence of the *design's reasonableness,* and three, a *causal relationship* between the plan or design and the accident.

*Mozzetti v. City of Brisbane*, 67 Cal. App. 3d 565, 574 (1977); *see also Grenier v. City of Irwindale*, 57 Cal. App. 4th 931, 939 (1997) ("A public entity claiming design immunity must show the existence of three elements, (1) [a] causal relationship between the plan and the accident; (2) discretionary approval of the plan prior to construction; [and] (3) substantial evidence supporting the reasonableness of the design.") (internal quotation marks and citations omitted).  Design immunity is often raised on summary judgment. *Grenier*, 57 Cal. App. 4th at 939.  The first and third elements, discretionary approval and causation, can only be resolved as questions of law if the facts are undisputed. *See Flournoy v. State of California*, 275 Cal. App. 2d 806, 813 (1969).  The third element, substantial evidence of reasonableness, requires only substantial evidence; that is, the public entity may still be entitled to immunity even if reasonable minds could differ over the reasonableness of the design. *See Compton v. City of Santee*, 12 Cal. App. 4th 591, 597 (1993).

### 1)   *Advance Approval of the Design*

To establish this first element the City must demonstrate "discretionary approval prior to construction, [which] simply means approval in advance of construction by the legislative body or officer exercising discretionary authority." *Grenier*, 57 Cal. App. 4th at 940 (internal citation and quotation marks omitted).  The City offers the declaration of Damon R. Curtis, a City Engineer, to establish that the bicycle lane design was approved prior to installation. (Dkt. No. 27-1 ¶ 5.)  Plaintiff nonetheless contends that there is a factual dispute regarding (1) when the bicycle path plan was approved, and (2) whether the individual who the City contends had authority to approve the plan (Mike Sallaberry) actually had the authority to do so.

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1

             a)       **The timing of approval**

2

      The parties agree that the plan to install bicycle lanes on Townsend Street was

3

approved in June 2009 by the SFMTA Board as part of the 2009 Bicycle Plan.  The parties

4

also agree that the path itself was installed (striped) between August 9 and 11, 2010.  They

5

dispute, however, when approval of the bicycle lane specifics actually occurred.  The

6

Townsend Street striping drawing is memorialized in a document entitled Traffic Striping,

7

Townsend Street-Division Street to 4th Street, STR 7716, Rev.4" ("Revision 4").  (Dkt. No.

8

27-1.)  Revision 4 is the traffic striping plan for Townsend Street from Division Street to 4th

9

Street.  Next to the date September 15, 2010 is the notation "ADDED BICYCLE LANES,

10

BACK-IN ANGLED PARKING."  Plaintiff contends that September 15 must be the date that

11

the bicycle design was actually approved and thus did not occur before the August 2010

12

installation.  The Court disagrees.

13

      The record is undisputed that the design was approved prior to the August installation.

14

Mike Sallaberry, the City engineer who approved the plan, testified that he approved the plan

15

prior to September 15, 2010; although he was not exactly sure when, it was likely in early

16

2010.  (Dkt. No. 43-2, 75:2-8.)  Mr. Sallaberry indicated that the review would have occurred

17

prior to submission of the work order.  (*Id*. at 76:9-22.)  The plan work order is dated August

18

9, 2010; thus, according to Mr. Sallaberry, he must have approved the plan prior to this date.

19

(Dkt. Nos. 44 ¶ 3 & 44-1.)  In light of the absence of any testimony or other evidence

20

suggesting that the date on Revision 4 is the date of approval notwithstanding Mr.

21

Sallaberry's testimony, there is no genuine dispute that Mr. Sallaberry approved the specifics

22

of the bicycle path plan prior to construction.

23

             b)       **Authority to approve**

24

      The Court's conclusion as to timing does not end the inquiry as Plaintiff challenges

25

Mr. Sallaberry's authority to approve the design.  Mr. Sallaberry is a licensed traffic engineer

26

and the then-senior engineer in charge of project development and implementation in the

27

Livable Streets Subdivision within the SFMTA.  (Dkt. No. 27 ¶ 5.)  Damon Curtis, another

28

engineer on the project, testified that Revision 4 was not presented to the SFMTA Board

1   because striping drawings do not go to the Board.  (Dkt. No. 43-3, 277:17-24.)  The Board

2   legislates the parking and traffic related items within the striping drawing, but non-

3   substantive decisions regarding the striping are not presented to the Board.  (*Id*. at 277:21-

4   278:12.)  Once the Board approved the plan (which they did in June 2009), the engineers

5   designing the plan would only have to return to the Board for approval of substantive changes

6   such as increasing the width of the bike lane, removing parking areas, extending the project

7   onto another street, and removing a lane of traffic, not for decisions such as "where the bike

8   lane itself [wa]s located," for example, how far from the curb it should be located.  (*Id*. at

9   278:13-297:16.)

10      Plaintiff's citation to San Francisco Transportation Code, Division II, Section

11  201(c)(4)-(5), does not create a genuine dispute of fact.  The Code merely requires SFMTA

12  Board approval prior to "install[ing] or remov[ing] bicycle lanes" and "implement[ing] []

13  changes within the bicycle route network," including "(a) the narrowing of right-hand travel

14  lanes," "(b) the narrowing or elimination of any bicycle lanes, bicycle paths or bicycle

15  routes;" and "(c) the addition of traffic lanes."  The Code is thus consistent with the testimony

16  of Mr. Curtis.  Board approval is required for the installation of bicycle lanes and such

17  approval was indisputably given in June 2009.  (Dkt. No. 34-13, p. 7.)

18      Design immunity's approval requirement is satisfied by "[a] detailed plan, drawn up

19  by a competent engineering firm, and approved by a city engineer in the exercise of his or her

20  discretionary authority." *Grenier*, 57 Cal. App. 4th at 940 (citing *Ramirez v. City of Redondo

21  Beach*, 192 Cal. App. 3d 515, 526 (1987)); *see also Norcal Waste Sys., Inc. v. State of

22  California, Dep't of Transp*., 2010 WL 2750240, at *5 (Cal. Ct. App. July 13, 2010)

23  (unpublished) (holding that where the project was properly approved and then built according

24  to plan, the approval element was satisfied).  Moreover, "if the public entity can prove the

25  requisite approval with oral testimony . . . the approval element of design immunity is met."

26  *Bane v. State of California* 208 Cal. App. 3d 860, 869 (1989) *abrogated on other grounds by

27  Cornette v. Dep't of Transp*., 26 Cal. 4th 63 (2001).  The City has satisfied the "discretionary

28  approval prior to construction" element of the design immunity defense as a matter of law.

United States District Court
Northern District of California

8

2)      *The Reasonableness of the Design*

The Court next turns to the City's obligation to produce substantial evidence of the design's reasonableness.  "The issue is not whether the trial court or jury could find the design unreasonable based on conflicting evidence, but whether there is *any* reasonable basis on which a reasonable public official could initially have approved the design."  *Compton*, 12 Cal. App. 4th at 597; *see also Moritz v. City of Santa Clara*, 8 Cal. App. 3d 573, 577 (1970) ("the 'design defense' is valid where there is any substantial evidence that a reasonable employee or legislative body could have approved the plan which actually was approved").

The City has presented substantial evidence of reasonableness.  First, the plan to place the bike lane on Townsend notwithstanding the existence of the railroad tracks was approved by numerous City engineers as well as the SFMTA Board.  Further, the plan was subject to numerous public hearings and disclosures and was supported by the San Francisco Bicycle Coalition.  Finally, the last change to the striping plan before it was implemented was designed by James Shahamiri, a then assistant engineer in the Liveable Streets Subdivision of Sustainable Streets.  Mr. Shahamiri worked under the direct supervision of Damon R. Curtis, a licensed traffic engineer.  And, as discussed above, the final plan was approved by Mr. Sallaberry, a licensed traffic engineer and the then senior engineer in charge of product development and implementation in the Liveable Streets Subdivision of Sustainable Streets.  The undisputed evidence that City engineers designed and approved the plan "alone, probably suffices to establish immunity."  *Compton,* 12 Cal. App. 4th at 597.

Second, the City's civil engineer expert Edward J. Ruzik has likewise concluded that the plan was reasonable.  *See Ramirez v. City of Redondo Beach,* 192 Cal. App. 3d 515, 526 (1987) ("there was substantial evidence supporting the view that the design of the median was reasonable.  As previously noted, the City's expert *did* find that the plan for the median strip was *not* dangerous.").

Third, the City's engineers and expert similarly opine that the plan satisfies all minimum requirements and guidelines of the *California Manual on Uniform Traffic Control Devices* ("California Manual") and the *Caltrans Highway Design Manual* ("Caltrans

United States District Court
Northern District of California

Manual"). *See Compton,* 12 Cal. App. 4th at 597 (holding that an additional reason the design was reasonable was that "there was evidence the design met or exceeded the state and county standards in effect at the time it was approved and met or exceeded the present sight line recommendations promulgated by California Department of Transportation and American Association of State Highway and Transportation Officials").

Plaintiff's insistence that the design failed to comply with either the American Association of Safe Highway and Transportation Officials Guide for the Development of Bicycle Facilities ("AASHTO") or the Caltrans Manual recommendations for bicycle lane crossings of railway tracks is unavailing.  He asserts that both authorities contemplate designing crossings in such a way as to require bicyclists to cross railway tracks at at least a 45-degree angle.  In its reply memorandum, the City responded that these authorities were inapplicable because the Townsend bike lane does not cross the railroad tracks; it is only when Plaintiff left the path to turn right that he crossed the tracks.  At oral argument, however, it was disclosed that 7th Street had a pre-existing bike lane.  Thus, there are arguably intersecting bike lanes; to leave one and enter the other the railroad tracks must be crossed.

This evidence does not change the result.  Regardless of whether there is a bike lane on 7th Street, the City engineers considered that bicyclists would be turning right from Townsend onto 7th Street.  In their judgment "a bicyclist would see the tracks and use appropriate judgment and caution according to their skill and ability in negotiating the tracks to cross them."  (Dkt. No. 53-4 at 64:12-19.)  In other words, they did not believe that the design of the bicycle path itself had to be modified to encourage crossing the tracks at a right angle.  The evidence identified by Plaintiff does not render this engineering judgment unreasonable.  Neither the ASSHTO nor Caltrans Manual recommendations address how to design a bike lane which itself does not cross a railroad track, but which would require the crossing of a railroad track at certain points to depart the lane; indeed, the CalTrans Manual diagram depicts only bike paths that themselves cross railroad tracks.  While the same rationale for designing a lane that itself crosses a track could apply to a lane adjacent to a

1   track and intersecting a lane crossing the track, the record is not such that this Court can

2   conclude that the judgment of the City's engineers does not constitute substantial evidence of

3   reasonableness.

4           Plaintiff's assertion that the design fails to comply with the 2009 Bicycle Plan is

5   similarly unavailing.  The 2009 Bicycle Plan is an action plan which was approved by the

6   SFMTA Board, but it does not mandate that particular design details be implemented.  Nor is

7   it an engineering manual that Mr. Shahamiri or any of the other engineers were required to

8   follow.  The Plan instead speaks in terms of "prioritizing" certain work relevant to Plaintiff's

9   claims here; namely, track removal and crossings based on the location and orientation to the

10  bicyclists' path of travel.  (Dkt. No. 35-4, p. 13.)  This "prioritizing" does not require the

11  SFMTA to take specific actions with respect to track removal or replacement before

12  implementing the plan.  Plaintiff does not cite any case that suggests this Court could find

13  there is not substantial evidence of reasonableness because of this evidence.

14          If the question on summary judgment were whether there is a genuine dispute as to

15  whether the bike lane design was reasonable, the Court would have to deny summary

16  judgment.  Plaintiff has offered evidence sufficient to support a finding that the lane should

17  have been designed differently in light of the need to cross the tracks to reach 7th Street.  That

18  question, however, is not involved with design immunity.  "[A]s long as there was any

19  substantial basis on which a government official could have decided the design was

20  reasonable, it is irrelevant that a contrary opinion might have been offered."  *Compton*, 12

21  Cal. App. 4th at 597.  The City has satisfied this element as a matter of law.

22                      **3)**      *Causation*

23          To establish causation for purposes of design immunity, the evidence must show that

24  "the alleged design defect was responsible for the accident, as opposed to some other cause."

25  *Grenier*, 57 Cal. App. 4th at 940.  In light of the Court's conclusions above, to the extent

26  Plaintiff contends that the accident was caused solely due to the bike lane design, the City is

27  entitled to design immunity.

28

United States District Court
Northern District of California

1   Plaintiff argues, however, that there were two concurrent causes of the accident: the

2   bike lane design *and* the deteriorated condition of the pavement around the tracks.  "By force

3   of its very terms the design immunity of section 830.6 is limited to a design-caused accident.

4   It does not immunize from liability caused by negligence independent of design, even though

5   the independent negligence is only a concurring, proximate cause of the accident."  *Cameron*,

6   7 Cal. 3d at 328 (quoting and following *Flournoy v. State of California*, 275 Cal. App. 2d

7   806, 811 (1969)).  In *Mozzetti v. City of Brisbane*, 67 Cal. App. 3d 574 (1977), for example,

8   the plaintiffs sued the city over flooding which occurred on their property.  They alleged that

9   the flooding was caused by (1) the poor design of a street resurfacing project, and (2)

10  inadequate maintenance of the storm sewers and drains around the plaintiffs' property.  *Id*. at

11  470-71.  The court rejected the city's design immunity defense because it failed to establish

12  any of the three required elements.  With respect to causation, the court held that the record

13  supported a finding that the flooding was caused by both the design defect *and* the poor

14  maintenance, thereby defeating the causation element of design immunity.  *Id*. at 575.  Here,

15  Plaintiff contends that design immunity is defeated because the accident was caused by the

16  defective design of the bike lane combined with the negligent maintenance of the roadway

17  adjacent to the rails: "the defectively designed bicycle lane channeled him into the train tracks

18  and the poorly maintained asphalt immediately adjacent to the railroad tracks, thus causing

19  the accident."  (Dkt. No. 33 at 7.)

20              **a)        Evidence of deteriorated asphalt**

21          The City first responds that the summary judgment record is devoid of admissible

22  evidence sufficient to support a finding of any problem with the condition of the asphalt that

23  contributed to Plaintiff's accident.

24          In support of his deterioration of the roadway theory, Plaintiff relies on the declaration

25  of Rajeev Kelkar, Plaintiff's accident reconstruction and biomechanics consultant.  Mr.

26  Kelkar opines: "Photographs taken after the Morgan accident and prior to the lane striping

27  change show areas of deteriorated asphalt immediately adjacent to the flange grooves on both

28  rails.  This deterioration effectively widens and deepens the transition that a bicyclist has to

12

negotiate when moving from the bicycle lane, across the rails and into the southern portion of the right-turn pocket." (Dkt. No. 37 ¶ 10.)  To support his opinion Mr. Kelkar cites to the following:

> The asphalt surface and rails (not considering the flange grooves) are not at the same level.  There is an approximately 0.1 inch vertical rise as one transitions from the eastbound bicycle lane to the top of the north rail.  There is a vertical drop of approximately 0.5 inch from the top of the north rail to the asphalt surface between the rails.  There is then a vertical rise of approximately 0.6 inch from the asphalt between the rails to the top of the south rail.  The numbers provided are averages of measurements made at the scene.

(*Id.* ¶ 9.)  Mr. Kelkar attached several photographs to his declaration which appear to show deterioration of the asphalt adjacent to the rails.  As for the origination of the photographs, he states only that Plaintiff took the photographs shortly after his accident.  Mr. Kelkar, however, cannot authenticate photographs taken by Plaintiff.  Plaintiff does not cite to his own deposition testimony or submit a declaration attesting to the condition of the roadway at the time of the accident (or to authenticate the photographs), and the City contends (although without citation to his testimony) that Plaintiff could not identify anything in particular about the pavement that contributed to the accident at his deposition.  (Dkt. No. 42 at 7:21-22.)

Plaintiff has not properly authenticated the photographs attached to Mr. Kelkar's declaration.  *See Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002) (unauthenticated documents may not be considered on summary judgment).  At oral argument, however, the City forthrightly stated that it does not dispute that the photographs were taken by Plaintiff approximately one month after the accident.  Drawing all reasonable inferences in Plaintiff's favor, a trier of fact could then infer that the deterioration of the asphalt shown in the photographs existed at the time of Plaintiff's accident and, in light of Mr. Kelkar's testimony, contributed to the accident.

### b)   The roadway condition as part of the design

The City next contends that it is still entitled to design immunity because its engineers, specifically James Shahamiri, considered the roadway condition around the rails in designing the bike lane.  Mr. Shahamiri testified that he conducted a field visit to inspect the features of

United States District Court
Northern District of California

1    the roadway, among other things, prior to beginning design work.  (Dkt. No. 43-1, 15:16-22.)

2    During this visit, Mr. Shahamiri did not observe any unusual conditions present on Townsend

3    Street between Seventh and Eighth Streets.  (*Id.* at 20:13-21:6.)  Nor did he notice any

4    particular conditions with respect to the surface of the roadway; he would have noticed a

5    major defect such as "large cracking, uneven pavement surface, potholes, pieces of the

6    pavement missing."  (*Id.* at 62:4-21.)  If he had noticed any particular roadway condition, it

7    would have been incorporated in his design.  (*Id.* at 20:5-9.)  The City thus argues that its

8    design plans accounted for all existing roadway features, including the condition of the

9    pavement around the tracks, and therefore design immunity applies.

10           The record does not support a finding as a matter of law that the City's engineers

11   considered the deteriorated condition of the roadway in designing the bike lane.  Mr.

12   Shahamiri denies that he observed any uneven pavement surface, or missing pieces of

13   pavement, even though Plaintiff's photographs appear to show such deterioration.  While a

14   reasonable trier of fact might find that Mr. Shahamiri considered the pavement's condition,

15   his denial of having noticed any defects in the pavement also supports a finding that he did

16   not.  The Court therefore cannot conclude that every reasonable juror would have to find that

17   the engineers considered the deteriorated condition of the pavement in designing and

18   approving the bike lane.

19                     **c)        Notice of the deteriorated pavement**

20           The inquiry, however, is not over: the evidence must still be sufficient to support a

21   finding that the City is liable for the non-design concurrent cause, that is, for the defective

22   pavement.  The parties agree that for the City to have negligently maintained the pavement it

23   had to have *notice,* actual or constructive, of the dangerous condition, here, the condition of

24   the pavement.  Cal. Gov't Code § 835(b).  "A public entity had actual notice of a dangerous

25   condition within the meaning of subdivision (b) of Section 835 if it had actual knowledge of

26   the existence of the condition and knew or should have known of its dangerous character."

27   *Id.* at § 835.2.  Plaintiff contends that the City had actual knowledge of the pavement defect

28   based on a prior civil suit involving a similar accident and because of accident reports

14

generated by the security department at Adobe Systems, Inc. ("Adobe"), whose offices are near the intersection of Seventh and Townsend.

"It is well-settled that before evidence of previous accidents may be admitted to prove the existence of a dangerous condition, it must first be shown that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question." *Salas v. California Dep't of Transp.*, 198 Cal. App. 4th 1058, 1072 (2011) (internal citation omitted).  "[T]he requirement of similarity may vary in strictness according to the purpose for which the evidence is introduced.  Thus, if offered to show a dangerous condition of a particular thing . . . the other accident must be connected in some way with that thing; but if offered only to show knowledge or notice of a dangerous condition, an accident at the place—a broader area—may be shown." *Sambrano v. City of San Diego,* 94 Cal. App. 4th 225, 237 (2001) (quoting 1 Witkin, *Evidence*, Circumstantial Evidence §104, p. 452 (4th ed. 2000)).

Plaintiff's reliance on accident reports generated by Adobe is insufficient to support a finding of the City's knowledge of the alleged problems with the pavement around the tracks. The cited evidence is a report stating that bicycle crashes have occurred in the vicinity of Plaintiff's accident on Townsend Street, and that the railroad tracks are a particular problem on the Adobe side of the street.  (Dkt. No. 34-6.)  The report does not mention any problem with the condition of the road around the tracks and, in particular, any deterioration of the asphalt adjacent to the tracks.  Thus, a reasonable trier of fact could not find that the report gave the City actual or constructive notice of the alleged pavement defects.

Adobe employee Rory Lydon's claim against the City presents a closer question.  Mr. Lydon's administrative claim against the City alleged that on December 12, 2008 (before the installation of the Townsend bicycle lane) he was riding on Townsend between Eighth and Seventh Street.  He made a right turn toward the front of his office building at 601 Townsend and began to cross the railroad tracks.  As he did so "his bicycle tire became unexpectedly caught in a gap between the railroad tracks and the broken edge of the asphalt roadway that had fell [sic] into disrepair . . . .  The broken asphalt crack was a substantial factor in causing

1  plaintiff to fall off his bicycle and suffer the injuries alleged herein." (Dkt. No. 34-9 at 2:19-

2  23.) The claim identifies the location of the accident as Seventh Street and Townsend. (*Id.* at

3  2.)

4          A reasonable trier of fact could find that this claim put the City on notice of defects in

5  the asphalt adjacent to the railroad tracks in the vicinity of Seventh and Townsend and that

6  such defects could cause bicycle accidents. The City's objection that the Lydon claim is

7  insufficient because it is not accompanied by testimony from Mr. Lydon and the written claim

8  is not signed by Mr. Lydon is not well taken. The issue is whether the City had notice of an

9  alleged dangerous condition; thus, what is relevant is what information was communicated to

10 the City through whatever means. *See Laird v. T.W. Mather, Inc.*, 51 Cal. 2d 210, 220 (1958)

11 (holding that employee's testimony that he advised employer that a different employee

12 reported a store patron had slipped on a step was sufficient to show notice of defect). The

13 City cites no authority for its implicit contention that notice is only adequate if it is backed up

14 by sworn testimony as to the details of the incident.

15         The City next objects that the claim is irrelevant and thus insufficient to support a

16 finding of actual or constructive notice because Mr. Lydon did not identify the same defect in

17 the asphalt as does Plaintiff here. Indeed, the City contends that because Mr. Lydon just

18 generally identified broken pavement between the track and the road at some unidentified

19 location on Townsend Street near Seventh Street, and Plaintiff here has not identified any

20 particular defect, other than to state that he fell along the third bike lane hashtag next to the

21 second railroad track, a reasonable trier of fact could not find notice. The Court disagrees that

22 to support a finding of notice Plaintiff must show that the City had notice of the precise area

23 of the deteriorated asphalt that allegedly contributed to Plaintiff's accident. As the California

24 Court of Appeals has observed, if the prior accident is offered to show notice, "an accident at

25 the place—a broader area—may be shown." *Sambrano*, 94 Cal. App. 4th at 237; *see also*

26 Witkin, *California Evidence*, §108 Similarity of Conditions (5th ed. 2012) ("substantial

27 similarity is enough, for no two accidents happen in precisely the same way"). Here, a jury

28 could find that because Mr. Lydon's accident was likely not caused by the exact same

United States District Court
Northern District of California

16

pavement defect as Plaintiff's accident, it did not put the City on notice.  A jury could also find that Mr. Lydon's report that the deterioration of the pavement along the railroad tracks in the vicinity of Seventh and Townsend caused his accident put the City on at least constructive notice of the purported dangerous condition.

In *Cole v. Town of Los Gatos*, 205 Cal. App. 4th 749 (2012), for example, plaintiff sued the City of Los Gatos after she was hit by an intoxicated driver while standing near the back of her car parked next to a city park and a city road.  She alleged the city was liable for her injury because the area where she had parked was a dangerous condition.  The trial court granted the city's motion for summary judgment and the appellate court reversed.  The court held that even though the city did not have prior notice of any accidents in the area, a trier of fact could find actual or constructive notice sufficient to satisfy Section 835 because the city had received complaints about drivers on the roadway where the plaintiff was hit and was aware that people parked their cars in the area.  *Id.* at 779-80.  Similarly, here, although Mr. Lydon's accident was not identical to Plaintiff's, as reported to the City it was sufficiently similar to put the City on notice that the asphalt in the vicinity of Seventh and Townsend adjacent to the railroad tracks was deteriorated and a danger to bicyclists.  While a reasonable jury could find no notice, on this record the Court cannot conclude that no reasonable jury could find notice.

The cases upon which the City relies are distinguishable.  In *Kotronakis v. San Francisco*, 192 Cal. App. 2d 624 (1961), the plaintiff slipped on vomit on a public sidewalk and argued the city was liable for the dangerous condition.  While the evidence was sufficient to support a finding that "the occurrence of vomit where [the plaintiff] fell . . . is frequent," *id.* at 629, the court held that record did not support a finding of notice:

> We think that it would be carrying the doctrine of constructive notice too far to attribute to the city notice of the presence of the vomit on which plaintiff slipped.  As a practical matter, if we were to do so, the city would have to have inspectors circulating throughout the area, day and night, and particularly on Sunday nights, to discover and remove such material from the sidewalks.  In our opinion, to state this proposition is to refute it.

1    *Id.* at 630.  This case, unlike *Kotronakis*, does not involve a transitory defective condition.

2    Indeed, the *Kotronakis* court specifically distinguished cases such as this that involve more

3    permanent dangerous conditions: "Cases involving broken sidewalks, holes in pavements, and

4    other similar conditions of a more or less permanent character (that is, permanent unless

5    repaired) are quite different from this case."  *Id.*

6        *California v. Superior Court*, 263 Cal. App. 2d 396 (1968), relied upon *Kotronakis*.

7    There the plaintiff toddler was injured when he sat on the remains of a bonfire on a state

8    beach.  The court held that to show notice under section 835(b) "it is not enough to show that

9    the state employees had a general knowledge that people do leave hot coals on public

10   beaches."  *Id.* at 399.  The court concluded that *Kotronakis* was "on all fours" and required

11   judgment in the state's favor.  *Id.*  Here, in contrast, Plaintiff does not rely on generalized

12   knowledge of defects in asphalt near railroad tracks; instead, Plaintiff relies on notice to the

13   City of the deterioration of the asphalt adjacent to the railroad tracks around Townsend and

14   Seventh Street and the allegation that such deterioration was dangerous to bicyclists crossing

15   the tracks in that area.

16       Finally, that the Lydon matter did not result in a judgment against the City does not

17   negate any inference of notice.  The Lydon administrative claim is not being offered to show

18   that the condition of the asphalt in that area was in fact dangerous; instead, it is being offered

19   to show that the City was aware of the contention that the condition of the asphalt was

20   dangerous.  Because the City has not demonstrated as a matter of law that no reasonable trier

21   of fact could find such notice, summary judgment must be denied.

22       **C.    Lack of Warning Signs**

23       Finally, to the extent Plaintiff claims that the lack of railroad crossing warning signs

24   contributed to the dangerous condition the City moves for summary judgment under

25   California Government Code Section 830.4.  That statute provides that "[a] condition is not a

26   dangerous condition within the meaning of this chapter merely because of the failure to

27   provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed

28   restriction signs."  Section 830.8 similarly provides that "[n]either a public entity nor a public

United States District Court
Northern District of California

United States District Court
Northern District of California

employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code." The City seeks to preclude Plaintiff from arguing that the lack of warnings or signage concerning the potential merger across the tracks created a dangerous condition. As Plaintiff's responses do not address the City's motion on this issue, the motion is granted.

**D.    The City's Motion to Strike**

The City also moves to strike four exhibits submitted with Plaintiff's supplemental response. The Court permitted such additional briefing because, among other reasons, the City had submitted new evidence with its reply memorandum. If the City had submitted the evidence with its initial moving papers, as required, Plaintiff would have had the opportunity to submit evidence responding to the City's evidence; however, because the City filed this new evidence with its reply, Plaintiff was deprived of this opportunity. Accordingly, the Court specifically gave Plaintiff the opportunity to submit additional evidence responding to the City's evidence. The Court acknowledges that its subsequent order created an ambiguity. Nonetheless, the Court's intent was to give Plaintiff a full and fair opportunity to respond to the City's reply evidence. Accordingly, the City's motion to strike is denied.

//
//
//
//
//
//
//
//
//
//

19

**CONCLUSION**

For the reasons explained above, the City's motion for summary judgment is granted in part and denied in part. Its motion for summary judgment is granted on Plaintiff's general negligence claim (first claim for relief). It is also granted on Plaintiff's premises liability dangerous condition claim to the extent the claim is premised solely on the defective design of the bike lane. The City has proved its design immunity affirmative defense as to such claim as a matter of law. Finally, the motion is granted to the extent Plaintiff claims that the City's failure to place warning signs created, at least in part, the dangerous condition leading to Plaintiff's accident. The motion is denied as to Plaintiff's claim that the dangerous condition causing his accident was the design of the bike lane coupled with the deteriorated condition of the asphalt adjacent to the railroad track where he fell.

This Order disposes of Docket Nos. 19 and 55.

**IT IS SO ORDERED.**

Dated: January 21, 2014

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California